HALL, P.J.
{¶ 1} Matthew and Joshua Tye appeal from the trial court's entry of judgment against them on their complaint seeking to hold appellees Jeffrey Beausay and the Donahey Law Firm liable for legal malpractice and other claims.
{¶ 2} The Tyes advance three assignments of error. First, they contend the trial court erred in not finding an express or implied attorney-client relationship between them and Beausay, or a recognized substitute for such a relationship, when entering summary judgment against them on their malpractice claim. Second, they assert that the trial court erred in making its own factual finding to dispose of their seven alternative claims for relief when ruling on a Civ.R. 12(B)(6) motion. Third, they argue that the trial court erred in failing to vacate its Civ.R. 12(B)(6) dismissal of their alternative claims upon determining, in the context of the later summary-judgment motion, that no attorney-client relationship existed.
{¶ 3} The present litigation stems from a 2010 medical-malpractice lawsuit filed by the Tyes' father, Scott Tye, and their stepmother, Barbara Tye. Scott and Barbara Tye were represented by attorney Beausay and the Donahey Law Firm in the lawsuit, which alleged negligence by various *973 doctors in failing to diagnose and treat a spinal epidural abscess that resulted in Scott Tye's paralysis. Matthew and Joshua, Scott Tye's adult sons, without their knowledge or assent, were also named by Beausay as plaintiffs in the medical-malpractice lawsuit where one or more claims were asserted on their behalf. As part of a settlement process, Beausay mediated and dismissed the lawsuit, which included the claims he asserted on behalf of the Tye brothers, without ever contacting or advising them in any way. Prior to distribution of the settlement proceeds, Scott Tye informed his sons that they were required to sign releases. At the time, the Tye brothers were young adults, and they did not live with Scott and Barbara. The Tye brothers signed the releases at their father's request. The releases precluded them from pursuing any present or future claims against the medical-malpractice defendants related to their father's medical treatment and care. Despite the settlement, the Tye brothers never received any of the compensation, which appears to have gone to their father, as none of it was segregated or earmarked for them. The Tye brothers did not discover that Beausay had involved them in the case until after their father's death, which occurred just weeks after the final claims were dismissed with prejudice and the last releases were signed. Appellants alleged the death was related to the medical care their father received.
{¶ 4} Upon discovering that Beausay had involved them in the medical-malpractice case without their knowledge, the Tye brothers filed the present lawsuit against Beausay and the Donahey Law Firm. In an amended complaint, they asserted a legal-malpractice claim as well as alternative claims for bad faith, conversion, malicious conduct, privity, estoppel, third-party beneficiaries, and respondeat superior. The trial court subsequently sustained in part and overruled in part a Civ.R. 12(B)(6) motion filed by Beausay and his law firm. It found that the Tye brothers' complaint sufficiently stated a claim for legal malpractice based on the existence of an attorney-client relationship with Beausay. Therefore, the trial court refused to dismiss the legal-malpractice claim. It concluded, however, that the alternative claims, regardless of how they were pled, were in substance legal-malpractice claims and were subsumed by that claim. Consequently, the trial court sustained the motion to dismiss with regard to the seven alternative claims.
{¶ 5} Beausay and the law firm later moved for summary judgment on the remaining legal-malpractice claim. The grounds for the motion were (1) that no attorney-client relationship existed between the Tye brothers and Beausay and (2) that the Tye brothers did not sustain any harm proximately caused by anything Beausay did. The Tye brothers opposed the motion, arguing (1) that a "malice" substitute for an attorney-client relationship existed and (2) that, at a minimum, genuine issues of material fact existed as to whether Beausay's actions had caused them harm.
{¶ 6} In a December 22, 2016 ruling, the trial court sustained the summary-judgment motion. It concluded that no attorney-client relationship existed between the Tye brothers and Beausay. It also concluded that the "malice" substitute for an attorney-client relationship did not apply. On that issue, it reasoned:
The Court finds there was no malice in the case at bar. Here, Beausay named the Plaintiffs, Matthew Tye and Joshua Tye, in Scott's medical malpractice suit to preserve their claims. Written Deposition of T. Jeffrey Beausay at 14:23-25, 15:1-4. The releases signed by the Plaintiffs *974 were done after Scott assured Beausay that he had discussed the matter with his sons and that there was not going to be a problem with the releases. Written Deposition of T. Jeffrey Beausay at 40:10-16. Furthermore, Matthew Tye said that signing the releases would not be a problem after Beausay told them that releases would need to be signed. Written Deposition of T. Jeffrey Beausay at 25:9-15. The Court finds these facts are not indicative of someone who consciously disregarded the rights and safety of Matthew and Joshua Tye.
The Plaintiffs also claim Defendant's professional misconduct creates a form of legal malpractice. A "violation of a rule [of professional conduct] should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Ohio Prof.Cond.R. Preamble ¶ 20. The Plaintiffs allude to ethical violations which is not a matter for this Court to decide and shall be left to another forum.
(Doc. # 61 at 6-7).
{¶ 7} In their first assignment of error, the Tye brothers contend the trial court erred in failing to find an express or implied attorney-client relationship between them and Beausay. They assert that Beausay obviously represented them in the medical-malpractice lawsuit. They also insist that an attorney-client relationship should be implied based on Beausay's actions and what they reasonably would have believed about the existence of an attorney-client relationship if they had been aware of his actions. Alternatively, the Tye brothers argue that the trial court erred in failing to find that malice could substitute for an attorney-client relationship and in failing to consider the other potential substitutes (such as privity) mentioned in their complaint. Finally, the Tye brothers contend bad faith can substitute for an attorney-client relationship here.
{¶ 8} In response, Beausay and the Donahey Law Firm argue that the Tye brothers cannot assert the existence of an implied attorney-client relationship, rely on the privity substitute for an attorney-client relationship, or argue bad faith because they did not mention those issues in opposition to summary judgment. Beausay and the law firm then insist that no express or implied attorney-client relationship existed, as a matter of law. Beausay and the law firm also argue that there is no genuine issue of material fact on the malice issue, that there is no evidence of privity between the Tye brothers and Scott and Barbara Tye, and that nothing Beausay did caused the Tye brothers to suffer any harm.
{¶ 9} In their reply, the Tye brothers assert that all of their alternative claims are properly before us. They note that the trial court dismissed those alternative claims under Civ.R. 12(B)(6) as being subsumed by the legal-malpractice claim. Under these circumstances, the Tye brothers assert that they were not required to mention the alternative claims again when opposing summary judgment on the legal-malpractice claim. The Tye brothers also reiterate their arguments about an implied attorney-client relationship and the applicability of the malice substitute, or other substitutes, for an attorney-client relationship. Finally, the Tye brothers contend we cannot consider the alleged non-existence of harm to them because the trial court did not decide that issue in its summary-judgment ruling.
{¶ 10} Upon review, we see no genuine issue of material fact as to whether an express or implied attorney-client relationship existed between the Tye brothers and Beausay. Construing the evidence and all reasonable inferences in a light most favorable *975 to the Tye brothers, we conclude that no such relationship existed as a matter of law. No express attorney-client relationship existed given that the Tye brothers admittedly never communicated with Beausay and never agreed to have him represent them. No implied attorney-client relationship existed either because the Tye Brothers were unaware Beausay had named them as parties and had no reasonable expectation that he was representing them. The Ohio Supreme Court reached a similar conclusion on analogous facts in Disciplinary Counsel v. Mamich , 125 Ohio St.3d 369, 2010-Ohio-1044, 928 N.E.2d 691.
{¶ 11} In Mamich , an attorney appeared in court and filed documents on behalf of a client's daughter, who had been named as a defendant in a suit by a creditor to collect a debt on a credit card the client had opened in his daughter's name without her knowledge. The attorney filed an answer on behalf of the daughter, appeared at hearings on her behalf, offered a settlement, and opposed a summary judgment motion-all without her knowledge or consent. The daughter did not discover the lawsuit against her, or the attorney's participation in it, until after her employer gave her a garnishment notice. The attorney admitted that he had acted without the client's daughter's knowledge and that he never had contacted her while the case was pending. Id . at ¶ 4-11. On these facts, the Ohio Supreme Court found no express or implied attorney-client relationship, which was required to support some of the alleged ethical violations. It reasoned:
We agree with the board, however, that these latter charges have not been established, because they required an attorney-client relationship between respondent and his client's daughter. Manifestly, there was no express attorney-client relationship between respondent and his client's daughter. Moreover, there was no implied attorney-client relationship because the daughter was unaware of the case and had no reasonable expectation that respondent was representing her.
Id . at ¶ 13.
{¶ 12} Although the parties here are aligned differently, the same reasoning is applicable. Mamich dictates that no implied attorney-client relationship exists because the Tye brothers admittedly were unaware Beausay had named them as plaintiffs and therefore could not have had a reasonable expectation that he was representing them. This court's opinion in Mays v. Dunaway , 2d Dist. Montgomery No. 20717, 2005-Ohio-1592, 2005 WL 742502, upon which the Tye brothers rely, is not to the contrary. Mays involved a proposed real-estate transaction. In Mays , the facts were sufficient to create a "reasonable belief" in the selling party's mind that the buying party's counsel was her attorney too. Among other things, the selling party signed a complaint that expressly identified counsel as her attorney. Unlike Mays , we see no facts that could have created a reasonable belief in the Tye brothers' minds that Beausay was their attorney. Indeed, the Tye brothers admit that they "had no reasonable belief that Beausay was their attorney because they were never provided notice of the filings made on their behalf[.]" (Appellants' brief at 13). That being so, we see no implied attorney-client relationship as a matter of law.
{¶ 13} We do note however from the Mamich case that the Supreme Court found that Mamich had violated several rules of professional conduct and he was suspended from the practice of law for six months, stayed on condition of no further misconduct.
{¶ 14} The Tye brothers next contend the trial court erred in failing to find *976 a genuine issue of material fact as to whether "malice" may substitute for an attorney-client relationship in this case. Construing the evidence and all reasonable inferences in a light most favorable to the Tye brothers, as we must in the summary-judgment context, we find their argument on this issue to be persuasive.
{¶ 15} In Omega Riggers & Erectors, Inc. v. Koverman , 2016-Ohio-2961, 65 N.E.3d 210 (2d Dist.), we recognized that an attorney-client relationship is a central element of a legal-malpractice claim. Id . at ¶ 23. We also noted, however, "that case law has developed three potential avenues around, or substitutes for, such a relationship: (1) the claimant is so situated that it is deemed in 'privity' with the actual client, (2) the attorney acted with malice toward the claimant such that an action for recovery is justified, or (3) the injury or damages caused by a tortfeasor to a corporate shareholder claimant are unique and distinct from those suffered by other shareholders, which justify a direct claim by the shareholder against the tortfeasor." Id . at ¶ 23.
{¶ 16} With regard to the "malice" substitute, we observed in Omega Riggers that "there is little Ohio case law identifying what set of facts is necessary to constitute malice as a substitute for an attorney-client relationship." Id . at ¶ 31. In the context of a legal-malpractice action, we concluded that malice might exist where an attorney's actions can be construed as exhibiting a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. Id . at ¶ 31-32. We also recognized that determining whether an attorney's actions fit within this definition of malice "requires a subtle, but indispensable, distinction regarding the applicable facts." Id . at ¶ 32. We explained that "there needs to be something extraordinary, perhaps unethical conduct or conduct on the verge of fraud, before an attorney's conduct in furtherance of his client's goals could support a reasonable inference of malice." Id . at ¶ 34. "[M]alice, as a substitute for an attorney-client relationship, cannot be predicated on actions by the attorney that the attorney is permitted to take, or even negligently may take, as part of the representation" of a client. Id . at ¶ 35. "[T]o constitute malice as a conscious disregard for the rights of others causing substantial harm that will suffice to substitute for an attorney-client relationship, facts must exist that demonstrate extra-legal activity." Id .
{¶ 17} When an attorney signs a pleading that is filed in court for a named party, the attorney indicates to the court, and the other parties, that the attorney represents that named party. See generally Civ. R. 11. We conclude that when an attorney holds himself out as representing a party in court litigation by instituting, pursuing, mediating, settling and dismissing a lawsuit on that party's behalf, when there is no expressed or implied attorney-client relationship, and there is never any contact with the named but unrepresented parties, the attorney's collective conduct is sufficient extra-legal activity to substitute for an attorney-client relationship, and an action against the attorney is justified if harm proximately results. In such a circumstance, the attorney cannot hide behind the lack of an actual attorney-client relationship and ignore the responsibility the attorney has undertaken.
{¶ 18} Even if we did not conclude that filing, pursuing, mediating, settling and dismissing a lawsuit is collectively sufficient extra-legal activity to constitute an exception to the attorney-client relationship, viewing the evidence and all reasonable inferences in a light most favorable to the Tye brothers, we find a genuine issue *977 of material fact as to whether Beausay acted with "malice" (i.e., extra-legal activity) toward them within the meaning of Omega Riggers . Beausay filed one or more claims on the Tye brothers' behalf, without their knowledge, naming them as plaintiffs in the medical-malpractice lawsuit brought by Scott and Barbara Tye. Beausay testified in his deposition that he named the Tye brothers as plaintiffs to "protect" their loss-of-parental-consortium claim from the approaching statute of limitations. (Beausay depo. at 10, 14-15). We accept that including in litigation family members who are entitled to recovery is a worthy objective if imminent circumstances are present and contact with the included parties is thereafter reasonably pursued. We note however that the fee agreement for the representation of Scott and Barbara Tye was entered on April 6, 2010 (Id ., Exhibit 4) and the complaint including the brothers was not filed until November 29, 2010. (Id., Exhibit 1) Assuming, arguendo, that Beausay added the brothers to protect their interests, he never before or since had any communication with them. (Id ., Exhibit 4) Beausay proceeded to pursue, mediate, settle and to dismiss all of the claims, including the Tye brothers' claims, eventually with prejudice. The terms of the settlement resulted in Scott Tye receiving a substantial amount of money in the multiple six-figures. None of the settlement funds were earmarked or otherwise designated for the Tye brothers, who received nothing. (Id . at 27, 45, 51). In connection with the settlement, Beausay also informed Scott and Barbara Tye that the Tye brothers would be required to sign releases. (Id . at 25). The Tye brothers subsequently signed the releases at their father's request, still without knowing that any claims had been asserted on their behalf and without legal representation or advice. The releases precluded the Tye brothers from pursuing any claims against the medical-malpractice defendants, including a potential future wrongful-death claim that arose when Scott Tye died shortly after the last of the releases were signed. (Id . at 41-42, 51).
{¶ 19} Matthew Tye testified in his deposition that he did not discover he had been involved in the lawsuit until after his father's death. (Matthew Tye depo. at 20). He testified that he signed the releases to help his father obtain money. (Id . at 58-59, 63-64). He acknowledged generally understanding that the releases precluded him from suing anyone. (Id . at 58-59). He did not understand all of the "implications," however, because "nobody ever explained it" to him. (Id . at 58). Among other things, he did not "know what the term wrongful death meant or anything before all of that." (Id . at 63). Later in his deposition, he added:
No, I mean, I just knew you weren't going to sue doctors. I didn't know my right was going to be, I guess, extinguished. I didn't understand because I didn't have the legal advice to know that my right was gone. I knew it was a release. I knew that I'm doing this for my father. I didn't know that I was part of the lawsuit or whatever * * *.
(Id . at 74).
{¶ 20} In our view, even if we had not concluded that the filing, pursuing, mediating, settling and dismissing the lawsuit was itself sufficient to substitute for an attorney-client relationship, a trier of fact reasonably could find that Beausay acted with "malice," as that term is articulated in Omega Riggers , by bringing the Tye brothers into the lawsuit without their knowledge, pursuing the litigation for two years and then (1) dismissing the lawsuit, including their existing claims, with prejudice and (2) settling their existing claims and a potential future wrongful-death claim based on release terms that he did *978 not review with them and settlement terms that ultimately provided them with nothing.[1] Even in the absence of an attorney-client relationship, a trier of fact reasonably could find that the foregoing actions by Beausay constituted a conscious disregard of the Tye Brothers' rights that had a great probability of causing substantial harm. Consistent with Omega Riggers , a trier of fact reasonably could conclude that Beausay's actions with regard to the Tye brothers went beyond what was necessary in the course of his representation of Scott and Barbara Tye, constituted a misrepresentation or at least unethical conduct, and is in the nature of "extra-legal" activity in the sense that it was extraordinary and exceeded the acceptable practices of an attorney.[2]
{¶ 21} Although Beausay asserts that the Tye brothers suffered no harm as a result of his actions, we believe there is a genuine issue that a trier of fact reasonably might conclude otherwise.[3] The Tye *979 brothers' claims presumably had some settlement value. Otherwise, there would be no purpose to include them in the lawsuit and the medical-malpractice defendants would not have required their signatures on the releases. Beausay certainly had no duty to preserve the Tye brothers' claims by bringing them into the lawsuit without their knowledge. Having elected to do so, however, a trier of fact reasonably could find that he then consciously disregarded their rights as unknowing plaintiffs in the lawsuit by pursuing a negotiated release-and-settlement process that largely ignored them (other than obtaining their signatures on unexplained releases) and provided them nothing, thereby resulting in substantial financial harm. On the other hand, a trier of fact also potentially might agree with Beausay and the Donahey Law Firm and conclude that the Tye brothers would have consented to the settlement anyway and suffered no harm. For summary-judgment purposes, however, we must construe the facts and all reasonable inferences in favor of the Tye brothers.
{¶ 22} In the remainder of their first assignment of error, the Tye brothers argue that other substitutes for an attorney-client relationship also exist, namely "privity" and "bad faith." We find these arguments unpersuasive. The privity substitute does not apply because the Tye brothers were not in privity with Beausay's clients, Scott and Barbara Tye, for purposes of the lawsuit. In Omega Riggers , we described the privity exception as "very narrow," noting that it "has been extended only to undeniably-vested beneficiaries of an estate and to the limited partners of a partnership." Id . at ¶ 24, 28. We specifically noted that it "has not been extended to minor children affected by representation of a parent in a divorce or to potential beneficiaries of a will." Id . at ¶ 28. For present purposes, we have found no case extending the privity exception to the adult children of a plaintiff in a medical-malpractice case, and we conclude that the exception does not apply.
{¶ 23} Finally, we conclude that no bad-faith substitute for an attorney-client relationship exists here. In support of their argument, the Tye brothers cite the rule "that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." Simon v. Zipperstein , 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987), citing Scholler v. Scholler , 10 Ohio St.3d 98, 462 N.E.2d 158 (1984), paragraph one of the syllabus. Under this rule, the Tye brothers would be required to show that Beausay acted in "bad faith" in his representation of Scott and Barbara Tye, not vis-à -vis the Tye brothers. The good-faith mentioned in the rule is directed toward the attorney's representation of the client, not the third party. Shoemaker v. Gindlesberger , 118 Ohio St. 3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, at ¶ 9 (observing that "attorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed"). The Tye brothers argue that a lack of good faith is equivalent to bad faith, but we see no evidence that Beausay acted with a lack of good faith as to his representation of *980 Scott and Barbara Tye.[4] Therefore, the rule in the present case remains that Beausay is immune from liability to third parties such as the Tye brothers unless he acted with malice toward them, which is an issue we have resolved above.[5]
{¶ 24} Having found that filing, pursuing, mediating, settling and dismissing a lawsuit is collectively sufficient extra-legal activity to constitute an exception to the attorney-client relationship, and having alternatively found that a genuine issue of material fact as to whether malice may be substituted for an attorney-client relationship between Beausay and the Tye brothers, we sustain that aspect of the first assignment of error.
{¶ 25} In their second assignment of error, the Tye brothers assert that the trial court erred in making its own factual finding to dispose of their seven alternative claims for relief when ruling on the Civ.R. 12(B)(6) motion filed by Beausay and the Donahey Law Firm. In particular, the Tye brothers challenge the trial court's finding that "an attorney client relationship did exist between the parties[.]" (Doc. # 22 at 5).
{¶ 26} The Tye brothers argue that the foregoing finding was improper in the context of a Civ.R. 12(B)(6) ruling. Although the trial court overruled the Civ.R. 12(B)(6) motion with respect to their legal-malpractice claim, the Tye Brothers contend the trial court proceeded to rely on its affirmative finding of an attorney-client relationship to dismiss their seven alternative claims on the grounds that they were "subsumed" by the malpractice claim.
{¶ 27} Upon review, we find the second assignment of error to be unpersuasive. Contrary to the Tye brothers' argument, the trial court did not make an "unequivocal" factual finding, in its Civ.R. 12(B)(6) ruling, that an attorney-client relationship existed. In ruling on the motion to dismiss, the trial court reasoned:
* * * [U]nless Defendants are admitting that they unethically filed a complaint on behalf of a party with which they had no relationship, there must have been an attorney client relationship at the time the complaint was filed in the previous case.
Based upon this reasoning, the Court finds that, absent additional evidence and testimony regarding the reasonableness of Plaintiffs' expectations with respect to their relationship with Defendant Beausay , the Court finds that an attorney client relationship did exist between the parties, and dismissal of this claims is not appropriate at this juncture in the proceedings.
(Emphasis added) (Doc. # 22 at 5).
{¶ 28} By its own terms, the trial court's analysis of the attorney-client issue was tentative and conditional. For purposes of a Civ.R. 12(B)(6) motion, the trial court *981 simply found the Tye brothers' legal-malpractice claim sufficient to withstand dismissal. We see no impropriety in this aspect of its ruling. The second assignment of error is overruled.
{¶ 29} In their third assignment of error, the Tye brothers contend the trial court erred in failing to vacate its Civ.R. 12(B)(6) dismissal of their alternative substantive claims upon determining, in the context of the later summary-judgment motion, that no attorney-client relationship in fact existed.
{¶ 30} In essence, the Tye brothers argue that the trial court made an error of law and logic by (1) finding an attorney-client relationship and dismissing their alternative claims under Civ.R. 12(B)(6) on the basis that they were subsumed by a legal-malpractice claim and (2) then entering summary judgment against them on the legal-malpractice claim on the basis that no attorney-client relationship existed. Upon determining, in the context of the summary-judgment motion, that no attorney-client relationship existed between them and Beausay, the Tye brothers reason that the trial court should have vacated its prior dismissal of the alternative tort claims and reinstated those claims.
{¶ 31} Despite the superficial appeal of the Tye brothers' argument, we find it to be unpersuasive. The Tye brothers' argument presumes that the propriety of dismissing their alternative claims for relief turned on whether an attorney-client relationship existed. If no attorney-client relationship (or a legally-recognized substitute) existed, they reason that there was no legal-malpractice claim to "subsume" their alternative tort claims. This argument misconstrues the applicable law. The potential viability of the Tye brothers' alternative claims did not depend on the existence of an attorney-client relationship (or a legally-recognized substitute) between them and Beausay. Rather, the potential viability of the Tye brothers' alternative substantive claims depended on whether those claims arose from Beausay's representation of any client.
{¶ 32} Our recent decision in Omega Riggers is instructive. In Omega Riggers , the plaintiffs asserted a legal-malpractice claim and alternative tort claims against an attorney. The trial court entered summary judgment against the plaintiffs on their alternative tort claims, reasoning that their only potential claim was one for legal malpractice. At the same time, the trial court entered summary judgment against the plaintiffs on their legal-malpractice claim, reasoning that there was no attorney-client relationship and no substitute for such a relationship. Omega Riggers at ¶ 21. On review, we agreed with the trial court that the only potentially viable claim was one for legal malpractice and that "the plaintiffs' various claims need to be analyzed in a legal-malpractice context." Id . at ¶ 22. Notably, we also agreed with the trial court that the defendant was entitled to summary judgment on the legal-malpractice claim because neither an attorney-client relationship nor a recognized substitute for such a relationship existed. Id . at ¶ 23 -48. This court engaged in a similar analysis in Buckeye Retirement Co., LLC v. Busch , 2017-Ohio-4009, 82 N.E.3d 66 (2d Dist.). There this court held that a tortious-interference claim against an attorney should have been analyzed as a legal-malpractice claim. Id . at ¶ 85. This court also found no attorney-client relationship between the plaintiff and the defendant attorney and no legally-recognized substitute, precluding liability for legal malpractice. Id . at ¶ 92-108.
{¶ 33} This court's decisions in Omega Riggers and Buckeye Retirement illustrate that the potential viability of a tort claim against an attorney turns on whether the claim arises from the attorney's performance as an attorney in his representation *982 of a client , not necessarily the tort plaintiff . In Omega Riggers , the plaintiffs were minority shareholders of a closely-held corporation. They sued the corporate attorney for legal malpractice. They also asserted other tort claims. In finding that the other tort claims constituted legal-malpractice claims, we noted that "[a] claim against an attorney for actions taken in his professional capacity is a claim sounding in legal malpractice no matter how artfully the pleadings attempt to raise some other claim." Omega Riggers at ¶ 22. Later in our opinion, we reiterated that "in Ohio, a claim against an attorney acting in his professional capacity is a malpractice claim." Id . at ¶ 32. We also noted that an attorney generally is immune from liability to a third party arising out of his representation in good faith on behalf of, and with the knowledge of, his client. Id . at ¶ 24, quoting Scholler v. Scholler , 10 Ohio St.3d 98, 103, 462 N.E.2d 158 (1984), quoting Petrey v. Simon , 4 Ohio St.3d 154, 447 N.E.2d 1285 (1983). This immunity will be lost, however, if the third party is in privity with the client, the attorney acted with malice toward the third party, or a third-party corporate shareholder has "uncommon" damages that are distinct from the damages suffered by other shareholders. Id . at ¶ 23-45. If "qualified immunity" is lost for one of these reasons, then a recognized substitute for an attorney-client relationship exists, and the third party may pursue a legal-malpractice claim against the attorney. Omega Riggers at ¶ 31 (recognizing that "an attorney who acts maliciously may be sued for malpractice by a non-client").
{¶ 34} Here the Tye brothers' claims arise out of Beausay's performance in his capacity as an attorney and his representation in good faith on behalf of, and with the knowledge of, his clients, Scott and Barbara Tye. Indeed, we see no evidence or argument that Beausay acted without good faith in his representation of Scott and Barbara Tye or without their knowledge. Therefore, Beausay is immune from liability to third parties such as the Tye brothers, with whom he had no attorney-client relationship, unless an acceptable substitute for an attorney-client relationship exists.[6] That being so, the trial court properly dismissed the Tye brothers' alternative substantive claims, notwithstanding its summary-judgment determination that no actual attorney-client relationship existed between the Tye brothers and Beausay. Accordingly, the third assignment of error is overruled.
{¶ 35} Having sustained the Tye brothers' first assignment of error in part, we hereby affirm in part and reverse in part the trial court's judgment. We affirm the trial court's dismissal of the Tye brothers' seven alternative claims for relief to insofar as they purport to plead substantive causes of action against Beausay and the Donahey Law Firm. We reverse the trial court's entry of summary judgment against the Tye brothers on their legal-malpractice claim, however, based on the existence of a genuine issue of material fact with regard to the applicability of a substitute for an attorney-client relationship between the Tye brothers and Beausay.
{¶ 36} Judgment affirmed in part, reversed in part, and cause remanded.
FROELICH, J. and TUCKER, J., concur.

In a footnote, Beausay and the Donahey Law Firm contend there is "no evidence" that Beausay settled the Tye brothers' loss-of-consortium claim. (Appellee's brief at 11, fn. 4). We disagree. Beausay mediated and settled the lawsuit, which included the Tye brothers' claims, after naming them as plaintiffs without their knowledge. On the record before us, we believe a trier of fact could find that Beausay did settle the Tye brothers' claims.

Parenthetically, we note that the rationale for not allowing a third party to sue an attorney in connection with the representation of a client does not apply here. The rationale for the rule is that an attorney's obligation is to the needs of the client, not a third party and, therefore, that " '[s]ome immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client.' " Simon v. Zipperstein , 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987), quoting W.D.G., Inc. v. Mutual Manufacturing & Supply Co ., 5 O.O.3d 397, 399-400 (10th Dist. 1976). " 'To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself.' " Id . In the present case, we see no conceivable way in which Beausay's proper representation of Scott and Barbara Tye would have placed him in any fear of a lawsuit by the Tye brothers and, as a result, no logical justification for applying the rule of attorney immunity from suit by a third party.

In light of this determination, we need not dwell on the Tye brothers' contention that Beausay cannot prevail on his lack-of-harm argument because the trial court did not enter summary judgment on that basis. We do note, however, that Beausay and the Donahey Law Firm did raise the lack-of-harm issue in support of their summary-judgment motion. Therefore, the issue was properly before the trial court even though the trial court declined to address it and instead entered summary judgment against the Tye brothers based on the lack of an attorney-client relationship or a recognized substitute. Under such circumstances, Beausay and the Donahey Law Firm are entitled raise the lack-of-harm issue on appeal as an alternative basis on which to uphold the summary-judgment ruling. See , e.g ., Non-Employees of Chateau Estates Resident Assn. v. Chateau Estates, Ltd ., 2d Dist. Clark No. 2007-CA-81, 2008-Ohio-5463, 2008 WL 4649146, ¶ 20 ("This does not end our inquiry, however, because the appellees gave the trial court two additional reasons why they qualified as creditors under the fraudulent-conveyance statute. Although the trial court did not address these arguments, we may affirm a correct judgment based on alternative grounds raised below."); Carpenter v. Long , 196 Ohio App.3d 376, 2011-Ohio-5414, 963 N.E.2d 857 (2d Dist.), ¶ 61 ("Accordingly, we agree with Carpenter that the trial court improperly applied the doctrine of res judicata. Having so found, however, we are nevertheless required to address the alternative grounds for summary judgment argued below. * * * Long and Big Hill having asserted that alternative grounds exist justifying the grant of summary judgment in their favor, we will address those before we proceed to Carpenter's remaining assignments of error."); Ray v. Ramada Inn N ., 2d Dist. Montgomery No. 25140, 2012-Ohio-6226, 2012 WL 6738228, ¶ 14 ("Although the trial court did not rely on the fact that Ray's photographs failed to depict a different tile floor, Ramada Inn made that argument below. * * * Because Ramada Inn made this argument below, we also may affirm the trial court's judgment on the additional grounds that Ray's photographs depict the same tile floor that Ramada Inn's photographs depicted.").

Even if evidence of bad faith by Beausay toward the Tye brothers could overcome the need for an attorney-client relationship, we see no evidence of any bad faith by Beausay toward them that is in any way distinguishable from his actions supporting the malice exception, which we already have found may apply.

In light of the foregoing analysis, we need not address the alternative argument by Beausay and the Donahey Law Firm that the Tye Brothers waived their claims about the existence of an implied attorney-client relationship, privity, and bad faith by failing to raise those issues in opposition to summary judgment. As set forth more fully above, the Tye brothers' arguments about an implied attorney-client relationship, privity, and bad faith fail even if they are properly before us. Notably, the Tye brothers did argue the malice issue in opposition to summary judgment, and that is one of the theories upon which we have found a genuine issue of material fact.

As explained in our resolution of the first assignment of error, we find a genuine issue of material fact as to whether extra-legal activity or "malice" may substitute for an attorney-client relationship in this case.